**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
**IN RE:**                                                                              **Chapter 7**
**LORELEI DECENA,**                                                          **Case No.: 15-72903**

        **Debtor.**
-------------------------------------------------------------X
**LORELEI DECENA,**                                                          **ADV. PRO.: 15-08275**
        **Plaintiffs,**                                                   **COMPLAINT**

        **-Against-**

**Citizens Bank,**
        **Defendant.**
-------------------------------------------------------------X

    Plaintiff, Lorelei DeCena, Debtor herein by her attorney, The Law Office of Darren Aronow, PC, as and for her complaint against the Defendant to determine the dischargeability of a loan which purports to be an "educational loan", respectfully states as follows:

### NATURE OF THE ACTION

1. This is an adversarial proceeding brought on behalf of the Debtor who seeks a declaration that the loan made by defendant to her does not constitute an "educational loan" under Bankruptcy Code §523 (a) (8) and therefore, such loan should not be excepted from discharge pursuant to §523 of the Bankruptcy Code.

### PARTIES

2. The Debtor, Lorelei DeCena, filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code on July 7, 2015. Plaintiff is the Debtor herein and an individual residing at 441 West Main Street, #4A, Huntington, NY 11743.

3. Defendant, Citizen Bank is a lender of educational loans doing business at 1 Citizens Plaza, Providence, Rhode Island and is a creditor in this proceeding.

## JURISDICTION

4. This Honorable Court has jurisdiction of this adversarial proceeding pursuant to U.S.C. §§157; 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1409 and 1927. The statutory predicate for this proceeding is 11 U.S.C. § 502 of the Bankruptcy Code and Rules 3001, 3007, 3012, 6009 and 7001 et seq. of the Federal Rules of Bankruptcy Procedure. This action is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(I).

## FACTS

5. In 2001 the Debtor enrolled in a "medical school"; St. Christopher's College of Medicine (hereinafter referred to as "SCC") which was purported to be a licensed and accredited medical school in Senegal, West Africa which had a satellite school in Luton, England.

6. The three year program, which SCC falsely represented to the Debtor, allegedly would enable her to sit for the medical boards in the United States.

7. Upon being accepted into the program, SCC provided the Debtor with a loan application from the Defendant, Citizens Bank, and contacted Defendant/Creditor Citizens Bank about obtaining a loan to pay for the "school's" course of study.

8. SCC actively instructed and directed the Debtor to Citizens Bank and gave Debtor detailed instruction as to how to obtain the "student" loans.

9. Defendant loaned money to the Debtor for purported educational purposes which were used for that purpose. The approximate amount currently owed is $161,591.19 as follows:

| | | |
|---|---|---|
| Citizens Bank | xxxx9303-0005 | $25,224.52 |
| Citizens Bank | xxxx9303-0004 | $49,298.72 |
| Citizens Bank | xxxx9303-0003 | $31,946.10 |
| Citizens Bank | xxxx9303-0002 | $27,373.06 |
| Citizens Bank | xxxx9303-0001 | $27,748.79 |

10. The Debtor fully expected, based upon fraudulent misrepresentations by SCC, to graduate with the ability to take her medical boards in the United States and to practice as a doctor.

11. The Debtor only discovered the fraudulent scheme in 2004 after the completion of her "medical degree" and upon learning that she was not eligible to sit for the medical boards in the United States as SCC was not licensed or accredited in the United States or in fact recognized by the medical board of any State as a medical **school**.

12. Further, after learning that her sham "medical degree" would not allow her to sit for the medical boards in the United States, she also learned that the "medical school" was not even a licensed or accredited medical school in Senegal nor even a recognized "educational institution."

13. Thus, she was not qualified to sit for the medical boards in Senegal, The United Kingdom or the United States nor for any other country in the world for that matter.

First Claim for Relief

*DECLARATION THAT THE LOANS CANNOT BE EXEMPT FROM DISCHARGE IN BANKRUPTCY AS THE LOANS ARE NOT <u>QUALIFIED EDUCATION LOANS</u> AND THE DEBTOR WAS NOT <u>AN ELIGIBLE STUDENT</u> PURSUANT TO 11 U.S.C. §523 (A) (8)(B) AS DEFINED IN  26 U.S.C. §221(D)(1)*

14. The Defendant is a lender engaged in the practice of educational lending and upon information and belief, is an experienced lender and provider of educational loans.

15. The loans that the Defendant extended to the Debtor were purportedly for "educational purposes".

16. As an experienced educational loan lender, defendant knew or should have known that the loans it extended to Debtor were not "qualified higher education loans" as defined by 26 U.S.C §221(d)(1).

17. Pursuant to 26 U.S.C. §221(d)(1) "The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay "**qualified** higher educational expenses" (a) which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred, (b) which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and (c ) which are attributable to education furnished during a period which the recipient was an **eligible student**.

18. Pursuant to §523 (a) (8) (B); Qualified Higher Educational Expenses are defined as the cost of attendance …at an ***Eligible Educational Institution***. (*Emphasis Added*)

19. Eligible Educational Institution is defined as 26 U.S.C. §25A (f) (2).

20. 26 U.S.C. §25A (f) (2) defines an Eligible Educational Institution as an institution:

> (A) "Which is described in §481 of the Higher Education Act of 1965 (20 U.S.C. §1088) as in effect on the date of the enactment of this section"
>
> (B) **Which is eligible to participate in a program under Title IV of such Act.**

21. As a practical matter, all eligible Title IV schools are listed in the school code list maintained by the United States Department of Education.

22. Interestingly, there appears to be a school code in the Debtor's loan application in a section of the credit application entitled School DOE Code. Please see a copy of the Citizen's Bank Student Loan Application of Debtor annexed hereto as **Exhibit "A"**.

23. What is unconscionable however is that the school code listed is actually a School DOE Code for Steinbeis Hoch Schule in Berlin and NOT for St. Christopher's College of Medicine. Annexed hereto as Exhibit "B" please find a School Code list reflecting the **legitimate** owner of the school code appearing on Debtor's loan application. Annexed hereto as **Exhibit "B"** please find a copy of the school code list demonstrating the actual School which was assigned DOE School Code 04008500.

24. In fact, at no time did the Title IV school code list ever contain St Christopher's "College of Medicine".

25. Put simply, if the loan given to the Debtor was not used at an Eligible Educational Institution, the loan could not be construed as a Qualified Educational Expense.

26. Absent a Qualified Educational Expense, the loan extended to the Debtor could not be considered a loan "for educational purposes" and thus the exception relating to the dischargeability of student loan debt as set forth in 11 U.S.C. §523(a)(8) cannot and does not apply.

27. As such, the "educational loans" of defendant should be discharged in Bankruptcy as 11 U.S.C. §523(a)(8) is not applicable to the case at bar as a matter of law.

28. In order for an educational benefit to be granted it is also necessary to determine whether the student being awarded the benefit was an "eligible student" at the time the supposed benefit was given.

29. The term "eligible student" is defined in 26 U.S.C. §221(d)(3); "The term "eligible student" has the meaning given such term by 26 U.S.C. § 25A(b)(3).

30. Pursuant to 26 U.S.C. § 25A(b)(3), an "eligible student" means, with respect to any academic period, a student who (A) meets the requirements of §484(a)(1) of the Higher Education Act of 1965 (20 U.S.C. §1094(a)(1), as in effect on the date of the enactment of this section, and (B) is carrying at least ½ the normal full-time work load for the course of study the student is pursuing."

31. The Debtor was never an "eligible student" as defined by 20 U.S.C. §1094(a)(1); because "In order to receive any grant, loan, or work assistance under this subchapter and part C of subchapter I of chapter 34 of title 42, a student must have (1) enrolled or been accepted for enrollment in a degree, certificate, or other program (including a program of study abroad approved for credit by the ***eligible institution*** at which student

is enrolled) **leading to a recognized educational credential at an institution of higher education that is an *eligible institution* in accordance with the provisions of section 1094 of this title**". Annexed hereto as **Exhibit "C"** please find a letter from e-Val Reports, a foreign education credential evaluation, demonstrating that the "educational credential" which Debtor believed she had earned was not a credential at all but rather a worthless piece of paper.

32. Thus, the Debtor was at no point an **eligible student** because she would never have been able to receive a degree from an **eligible institution** as this school was NEVER even an accredited or recognized institution of higher education, let not an eligible institution. (**See Exhibit "B"**)

Second Claim for Relief

*DECLARATION THAT THE LOANS CANNOT BE EXEMPT FROM DISCHARGE IN BANKRUPTCY AS THE DEBT WAS NOT EXTENDED TO DEBTOR TO EARN AN EDUCATIONAL CREDENTIAL, BENEFIT OR STIPEND*

33. The Courts in this jurisdiction have identified two classes of debt which are nondischargeable by virtue of §523 (a) (8) and they fall into two general categories: 1. student loans and 2. educational benefits. Mehlman v. New York City Board of Education (In Re Mehlman) 268 B.R. 379 (2001).

34. It is clear that the extension of credit given to Debtor in the case at bar is clearly not a student loan because it was not and cannot be considered a qualified education loan under the statute by virtue of Debtor's school's absence from the school code list as an eligible Title IV school.

35. Thus, the only remaining question is whether the loan that was extended to Debtor could be considered an "educational benefit"; which it cannot.

36. In interpreting that section of 11 U.S.C. 523 (a) (8) (A) (ii) relating to an educational benefit, since there appears no definition of an "educational benefit" within the Bankruptcy Code, <u>Carow v. Chase Student Loan Service</u>, (In re Carow), 2011 Bankr. LEXIS 823 (Bankr. D. N.D. 2011), thus there has been no clear cut definition of what constitutes an educational benefit except to analyze set of factual circumstances on a case by case basis.

37. The facts in the instant case are significant because in determining whether an educational benefit was granted to the Debtor several factors must necessarily be analyzed.

38. It is inconceivable that in the instant matter it be deemed that an educational benefit was received by Debtor, when, in fact, the Debtor never received training or learning that would be deemed by any licensing body an "education".

39. There was NO educational benefit to the Debtor for the years wasted in attending and graduating a "medical school" where after awarding a degree that requires further licensing in order to provide an educational benefit to the individual, no such opportunity to obtain the license was possible.

40. Her sham degree did not and could not have led to a "recognized educational credential", but rather, is a worthless piece of paper. Annexed hereto as **Exhibit "C"** see a New York State Board of Regents Decision which determined that another medical student, who was similarly situated to debtor that his license was being

revoked despite passing the Medical Boards of New York State and successfully completing his residency based upon the fact that SCC was not recognized as an accredited or qualified medical school in the United States in addition to a letter from E-Val Reports, a nationally known Credential Evaluation Service confirming what Debtor already knew, that Debtor was not eligible to sit for the medical boards in the United States because the program she attended was not a recognized nor accredited program for the study of medicine.

41. Additionally, annexed hereto as **Exhibit "D"** is an article which details the scheme in which Debtor and thousands of other unsuspecting students became embroiled wherein it was discovered that St. Christopher's "College of Medicine" was not a college at all but a scheme to collect millions of dollars in tuition with no appreciable means of

42. Thus, in the instant matter the loans proffered by the Defendant to Debtor were NOT to gain a benefit but rather to assist in the perpetration of a fraud as Citizens Bank knew or should have known that the school was not a legitimate Title IV school, that the DOE school code that the "school" was using was a fraud and that no educational benefit was accorded because the "education" that was received, if any, was not an education that was recognize anywhere in the world.

43. The legislative history of subsection 523(a)(8) indicates that Congress sought to quell the situation where an individual graduated from college owing one or more educational loans and then discharged them through a bankruptcy proceeding without making a good faith effort to repay those loans. See Report of the Commission on the

Bankruptcy Laws of the United States, H.R.Doc. No. 93-137, 93rd Cong., 1st Sess., Pt. 1, 176-77.  In re Avila, 53 B.R. 933 (Bankr W.D. N.Y. 1985).

44. The case law with respect to 11 U.S.C. §523 (a) (8) (A) (ii) are simply not consistent with the facts of the case at bar and are easily distinguished from the abuse which Congress tried to eliminate by enacting this subsection.

45. In each and every case where it was determined that an "educational benefit" was received, the school in question was a Title IV school, or if the benefit in question was not granted by a Title IV school, there was real and appreciable proof of a benefit that advanced the education or knowledge of the Debtor or advanced the Debtor's prospects of gainful employment.

46. In the instant matter, the only thing bestowed upon the Debtor was a massive amount of student loan debt in favor of a creditor who at the very least acted in bad faith without any appreciable possibility that the three years the Debtor spent in England would confer anything but a future of destitution and misery.

47. The Defendant either knew or should have known that this "school" was neither licensed, nor accredited, nor an eligible institution such that the loan would be deemed an educational benefit as contemplated by 11 U.S.C. §523(a)(8) (A) (ii).

48. In each and every other case, it was the Debtor who acted in bad faith, whereas here, the Debtor made a good faith effort to repay the debt which was borne from fraud, and now seeks, as the honest but unfortunate Debtor is entitled, to a fresh start.

**WHEREFORE**, Debtor prays that this Court enter a judgment in favor of the Debtor and against the defendant for the following relief:

(a) Issue an Order Discharging the defendant's loans pursuant to 11 U.S.C. §523(a)(8), and

(b) For such other relief as this Court shall deem just, proper and equitable.

Dated: October 10, 2015
       Hicksville, New York

    /s/ Darren Aronow_____
    Darren Aronow
    Attorney for Debtor/Plaintiff
    8B Commercial Street, suite 1
    Hicksville, NY 11801
    (516) 663-0970

TO:
Citizens Bank
1 Citizens Plaza
Providence, RI 02903