**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------------X

In re:

LORELEI DECENA,

                      Debtor,

Case No.: 15–72903-reg
Chapter 7

--------------------------------------------------------------------- X

LORELEI DECENA,

                      Plaintiff,                      Adv. Proc. No. 15–8275-reg

    -against-

CITIZENS BANK,

                      Defendant.

--------------------------------------------------------------------- X

## **MEMORANDUM DECISION**

      Before the Court is the Debtor's motion asking the Court to find that an obligation of approximately $161,000 in education-related debt should be discharged in this bankruptcy case. The Defendant, Citizens Bank ("Citizens"), did not file an answer. The Court noted the default, and the Debtor filed the instant motion for default judgment.

      The Debtor does not argue that repaying debt would be an "undue hardship" as that term is used under the Code. Rather, she argues that the subject loans do not fit within the parameters of student loan debt proscribed by section 523(a)(8) and therefore are eligible for a discharge. This case involves private student loans – not made, insured or guaranteed by the government – to attend an unaccredited, unlicensed foreign medical school.

The Court finds that the debt in this case is dischargeable in that the loans do not fall within section 523(a)(8)'s "student loan" discharge exception, and default judgment in favor of the Debtor is appropriate. Although the loans underlying this debt were (arguably) used for educational purposes, the uncontested facts of this case are that the loans were not made, insured or guaranteed by the government and thus the debt does not fall within section 523(a)(8)(A)(i); nor were these loans "qualified education loans" as that term is defined by the Internal Revenue Code, because the foreign medical school was unlicensed and unaccredited, and thus the debt does not fall within section 523(a)(8)(B).  Finally, the Court finds that the debt does not fall within section 523(a)(8)(A)(ii) because it did not arise from "an obligation to repay funds received as an educational benefit, scholarship, or stipend." Although there is some case law authority to suggest that section 523(a)(8)(A)(ii) should be read broadly to encompass any debt resulting from an educational endeavor, the Court finds that the provision cannot be interpreted to include private loans such as the loans we have in this case. The Court is fully aware of Congress's expansion over the years of the category of education-related debt which is *not* subject to discharge in bankruptcy.[1] However, this expansion is not limitless. Congress certainly can amend the statute to reflect its intent; but until such time, the Court is bound by the existing language of the statute and the guiding principle that exceptions to discharge must be construed narrowly in favor of a debtor.

For the reasons set forth in this Memorandum Decision, the debt to Citizens is discharged.

---

[1] *Compare, e.g.*, 11 U.S.C. § 523(a)(8) (1988) (discharge exception for "educational loan[s] made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit, or nonprofit institution") *with* 11 U.S.C. § 523(a)(8) (1990) (additional discharge exception for "obligation[s] to repay funds received as an educational benefit") *and* 11 U.S.C. § 523(a)(8) (2005) (additional discharge exception for "any other educational loan that is a qualified educational loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986").

**FACTS**

In June of 2004, the Debtor completed a three-year course of study at St. Christopher's College of Medicine ("St. Christopher's") in Senegal, West Africa. Upon completion of the program and the receipt of a medical "degree," the Debtor returned to the United States to take the medical boards. However, she was ineligible to sit for the medical boards in multiple states due to the fact that St. Christopher's was not an accredited medical school. (Amended Complaint ¶¶ 33–37). The Debtor alleges that St. Christopher's falsely represented to her that it was licensed and accredited, and her medical degree would qualify her to sit for U.S. medical boards. (Amended Complaint ¶¶ 5–6).

Prior to beginning her course of study, St. Christopher's provided the Debtor with a loan application from Citizens to borrow the funds necessary to fund her studies. (Amended Complaint ¶ 7). The loan application reflects "St. Christopher's College of Medicine," which is not on the Federal School Codes List of eligible educational institutions, as the school for which the Debtor incurred the loan; however, the Department of Education Code reflected in the application (no. 040085) is associated with an unrelated school in Berlin, Germany – Steinbeis Hoch Schulte Berlin, which is on the Federal School Codes List of eligible educational institutions. (Amended Complaint ¶ 23). It appears that the Debtor executed a series of five loans from Citizens, the total outstanding balance on which was approximately $161,592 on the date of the bankruptcy filing. (Amended Complaint ¶ 9). According to the Debtor, she made efforts to repay the loans from 2006 to 2011, when she ceased making payments and returned to school for a master's degree. (Amended Complaint ¶ 39). Citizens is neither a governmental unit nor a non-profit institution; the loans were not insured or guaranteed by a governmental unit; nor were the loans made under a

program funded in whole or in part by a governmental unit or nonprofit institution. (Amended Complaint ¶ 10 and Exh. A).

On July 7, 2015, the Debtor filed a "no asset" voluntary chapter 7 petition. The Debtor scheduled obligations to Citizens in the total amount of $161,591.19. On August 11, 2015, the chapter 7 trustee issued a report of no distribution, and on October 15, 2015, the Court granted the Debtor's discharge.

On October 13, 2015, the Debtor filed a complaint seeking to declare the debt to Citizens discharged. The complaint was served upon Citizens via regular mail at: 1 Citizens Plaza, Providence, RI 12903 Attn: Bruce Van Saun Chairman, CEO & President. Citizens failed to answer or otherwise appear and the Clerk of Court noted Citizens' default on December 14, 2015. On January 9, 2016, the Debtor filed an amended complaint ("Amended Complaint"). The Amended Complaint was served by the same means and at the same address as the original complaint. Citizens again failed to answer or otherwise appear, and the Clerk noted the default on February 22, 2016.

On February 29, 2016, the Debtor filed this amended motion for default judgment. On March 21, 2016, the Court held a hearing on the motion and counsel for Citizens appeared at the hearing in opposition. Although it remains unclear when Citizens actually became aware of this proceeding, at the hearing Citizens' counsel represented that it was contacted by Citizens on March 18, 2016 – three days prior to the hearing. Citizens' counsel did not argue that Citizens did not receive the complaint, Amended Complaint or the motion for default judgment. Rather, counsel argued that service of the complaint and Amended Complaint were not made by certified mail as required by Federal Rule of Bankruptcy Procedure 7004(h). Citizens' counsel requested additional time to respond to the motion for default judgment, and the Court granted Citizens fourteen days

4

to file a reply. Rather than answer the Amended Complaint or make any substantive argument in defense of the allegations of the Amended Complaint, on April 1, 2016 Citizens filed an objection to the default motion asking for an additional 30 days to answer the Amended Complaint. In the objection, Citizens argues that this Court lacks personal jurisdiction over it due to the Debtor's failure to serve the Amended Complaint by certified mail. Yet, Citizens admits to having received the Debtor's amended motion for default judgment, filed on February 29, 2016 (Objection ¶5), which motion was served by the same means as the complaint and Amended Complaint.

## DISCUSSION

### I.     *Default Judgment Under FRCP 55(b)*

After a court notes a defendant's default, a plaintiff may seek entry of default judgment under Federal Rule of Civil Procedure 55(b), made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7055.[2] A default occurs if the defendant fails to respond to the complaint within thirty days after the issuance of the summons. *See* Fed. R. Civ. P. 7012(a). Here, the supplemental summons was issued, and served on Citizens by regular mail, on January 11, 2016. Despite having admitted knowledge of this adversary proceeding sometime between February 29, 2016 and March 16, 2016, Citizens still has not filed an answer or put forth any defense to the allegations of the Amended Complaint. Based on these facts, the Court declines to set aside Citizens' default for "good cause" under Federal Rule of Bankruptcy Procedure 7055(c) despite the Debtor's failure to serve the Amended Complaint by certified mail.

---

[2] Subsections (a) and (b) of the Federal Rule of Civil Procedure 55 establish a two-step process for the Court's entry of default judgment – entry of default, then entry of default judgment.

Citizens' default does not, standing alone, entitle the Debtor to a default judgment. *See Nickolas v. Boccio (In re Boccio)*, 281 B.R. 171, 174 (Bankr. E.D.N.Y. 2002) (non-defaulting party not entitled to default judgment as a matter of right). Although "[u]pon a default, the Court generally must take the well-pleaded allegations of a complaint as true," *In re Drexler Associates*, 57 B.R. 312 (Bankr. S.D.N.Y. 1986) (citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63–64 (2d Cir. 1971), *reversed on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973)), the Court must still decide whether the Amended Complaint alleges "a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Microsoft Corp. v. Computer Care Ctr., Inc.*, No. 06-CV-1429 SLT RLM, 2008 WL 4179653, at *6 (E.D.N.Y. Sept. 10, 2008). The plaintiff must demonstrate a prima facie case in order to obtain a default judgment. *See Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 4 (2d Cir. 1970). "Put differently, liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the Court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

Accordingly, the Court must determine whether the Amended Complaint states a prima facie case under section 523(a)(8).

## II.     Exceptions to Discharge–11 U.S.C. § 523 (a)(8)

The Bankruptcy Code is designed to provide a "fresh start" to the discharged debtor. *United States v. Sotelo*, 436 U.S. 268, 280, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978). Courts must limit the Bankruptcy Code's discharge exceptions to those "plainly expressed." *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1760, 185 L.Ed.2d 922 (2013). Accordingly, the Court must

interpret exceptions to the broad discharge presumption narrowly. *Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

Congress has determined that the Bankruptcy Code's purpose to give honest debtors a fresh start does not automatically apply to student loan debtors. *Nash v. Connecticut Student Loan Foundation (In re Nash)*, 446 F.3d 188, 191 (1st Cir. 2006). "[T]he interest in ensuring the continued viability of the student loan program takes precedence." *Id.*

The Bankruptcy Code's discharge exception for student loans is found in section 523(a)(8), which provides that, except in cases of undue hardship, a bankruptcy discharge does not discharge a debtor from any debt for:

> (A) (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . .

11 U.S.C. § 523(a)(8). In short, section 523(a)(8) excepts four types of educational debt from discharge:

> (1) educational benefit overpayments or loans made, insured, or guaranteed by a governmental unit;
>
> (2) educational benefit overpayments or loans made under any program partially or fully funded by a governmental unit or nonprofit institution;
>
> (3) obligations to repay funds received as an educational benefit, scholarship, or stipend; and
>
> (4) "qualified education loan[s]."

*See id.*

It is incumbent upon a debtor to prove either (a) that the education-related debt does not fit within these parameters, or (if they cannot prove (a)) (b) that it would be an undue hardship to repay the debt.

The current iteration of section 523(a)(8) was adopted as part of BAPCPA in 2005. Prior to BAPCPA, section 523(a)(8) provided that a bankruptcy discharge would not apply to a debt for:

> an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit, or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend . . .

11 U.S.C. § 523(a)(8) (1994). Congress's addition of subsection 523(a)(8)(B)'s discharge exception for "qualified education loans" is the only obvious addition to section 523(a)(8)'s language. However, Congress also fragmented part of the statute which was previously an "integrated whole." That is, the creation of subsections within section 523(a)(8) makes clear that the "obligation to repay funds received as an educational benefit, scholarship, or stipend" referenced in subsection 523(a)(8)(A)(ii), and previously part of the integrated whole of section 523(a)(8), was intended to have its own meaning separate and distinct from the "educational benefit overpayment or loan" referenced in subsection 523(a)(8)(A)(i). *But see Sensient Technologies Corp. v. Baiocchi (In re Baiocchi)*, 389 B.R. 828, 831–32 (Bankr. E.D. Wis. 2008) (finding that the decision to create new subsection 523(a)(8)(A)(ii) "must be read as encompassing a broader range of educational benefit obligations").

The Debtor is asking the Court to find that the loans advanced by Citizens, although they did in fact fund the Debtor's course of studies at St. Christopher's, do not fit within the parameters of section 523(a)(8). There is a line of cases, discussed later in this opinion, which have interpreted section 523(a)(8)(A)(ii) – "obligation to repay funds received as an educational benefit, scholarship, or stipend" – to be effectively a catch-all provision applicable to any loan the proceeds

8

of which were used for a debtor's education regardless of government involvement or a school's accreditation. For the reasons that follow, the Court disagrees with that interpretation and finds that the Debtor's loans from Citizens do not fall within any subsection of section 523(a)(8).

### A.  Section 523(a)(8)(A)

Section 523(a)(8)(A)(i) excepts from discharge two types of educational claims: (1) educational benefit overpayments or loans made, insured, or guaranteed by a governmental unit; and (2) educational benefit overpayments or loans made under any program partially or fully funded by a governmental unit or nonprofit institution. In this case, the Debtor alleges that the loans at issue were not made, insured, or guaranteed by a governmental unit, or made under a program funded in whole or in part by a governmental unit or nonprofit institution. (Amended Complaint, Exh. A). Thus, the uncontested allegations of the Amended Complaint clearly establish a prima facie case under section 523(a)(8)(A)(i).

Less clear is whether the loans at issue fall within the parameters of section 523(a)(8)(A)(ii) which excepts from discharge an "obligation to repay funds received as an educational benefit, scholarship, or stipend." In 2005, Congress created a clear distinction between an "educational benefit overpayment or loan" and an "obligation to repay funds received" when it separated those concepts into two separate subparagraphs of section 523(a)(8)(A). In doing so, Congress indicated an intention to give each subsection a distinct function and to target different kinds of educational debts. *See Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (applying the familiar canon of *expressio unius est exclusio alterius*). Moreover, by including "educational benefit" in section 523(a)(8)(A)(ii)'s list, Congress indicated an intention to give "educational benefit" a meaning similar to "scholarship" and "stipend." *See Gustafson v. Alloyd*

9

*Co.*, 513 U.S. 561, 576, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (applying the familiar canon of *noscitur a sociis* under which each word in a statute's list presumptively has a "similar" meaning). Unlike loans, "scholarships" and "stipends" are conditional educational grants, which are not generally required to be repaid. *Campbell v. Citibank, N.A. (In re Campbell)*, No. 14-45990-CEC, 2016 WL 1166142, at *3 (Bankr. E.D.N.Y. Mar. 24, 2016) (Craig, C.J.). It follows that "educational benefit" does not encompass loans. *Id.* Because loans are specifically mentioned in subsection 523(a)(8)(A)(i) and are not mentioned in subsection 523(a)(8)(A)(ii), and because "educational benefit" refers to funds not required to be repaid, the Court finds that Congress intended subsection 523(a)(8)(A)(ii) to refer to educational debts other than loans.

There is a line of cases holding that any education-related debt, including those emanating from "loans," qualifies as an "educational benefit" under section 523(a)(8)(A)(ii). *See, e.g.*, *Benson v. Corbin (In re Corbin)*, 506 B.R. 287, 296 (Bankr. W.D. Wash. 2014) (relying on section 523(a)(8)(A)(ii) to except from discharge debt owed to co-signor who repaid student loan upon the debtor's default); *Beesley v. Royal Bank of Canada (In re Beesley)*, No. 12-2444-CMB, 2013 WL 5134404 (Bankr. W.D. Pa. Sept. 13, 2013) (relying on section 523(a)(8)(A)(ii) to except from discharge debt owed to private lender for tuition, room and board, and books); *Roy v. Sallie Mae (In re Roy)*, No. 08-33318, 2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010) (relying on section 523(a)(8)(A)(ii) to except from discharge debt owed to a private company for tutoring services provided to the debtor's child); *Chase v. Student Loan Serv. (In re Carow)*, No. ADV 10-7011, 2011 WL 802847 (Bankr. D.N.D. Mar. 2, 2011) (relying on section 523(a)(8)(A)(ii) to except from discharge debt owed under promissory notes in which the debtor certified that the proceeds would be used for educational expenses); *Skipworth v. Citibank Student Loan Corp. (In re Skipworth)*, No. ADV. 09-80149-JAC-7, 2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010) (relying on

section 523(a)(8)(A)(ii) to except from discharge debt incurred for a bar review course). However, by focusing solely on the stated *educational purpose* giving rise to the debt – rather than the manner in which the debt arose – to qualify the debt under subsection 523(a)(8)(A)(ii), these cases effectively find that subsection 523(a)(8)(A)(i) is subsumed by subsection 523(a)(8)(A)(ii). Such an interpretation also results in subsection 523(a)(8)(B) being subsumed by subsection 523(a)(8)(A)(ii), and renders subsection 523(a)(8)(B) superfluous. *See Nunez v. Key Education Resources (In re Nunez)*, 527 B.R. 410, 415 (Bankr. D. Or. 2015). It defies logic to suggest that Congress added subsection 523(a)(8)(B) in 2005 to encompass a subset of loans already covered under subsection 523(a)(8)(A)(ii). *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 836, 108 S. Ct. 2182, 2189, 100 L.Ed.2d 836 (1988) (expressing reluctance "to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law"). The Court finds that section 523(a)(8)(A)(ii) is not a "catch-all" provision designed to encompass any educational claim arising out of any transaction that bestows an educational benefit on a debtor.

The Court agrees with the reasoning of Chief Judge Craig in the recent case of *In re Campbell*, and believes that Congress intended section 523(a)(8)(A)(ii) to encompass alternatives to the typical debtor–creditor relationship in the education context. These alternatives encompass cash benefit programs, such as veteran educational benefits, stipends for teaching assignments, conditional grants, cash scholarships and other obligations that are distinct from traditional student loans. *See* 2016 WL 1166142, at *4; *Inst. of Imaginal Studies v. Christoff (In re Christoff)*, 527 B.R. 624, 634 n. 9 (B.A.P. 9th Cir. 2015). In fact, legislative history unambiguously indicates that Congress added the phrase "educational benefit" to section 523(a)(8) in order to "add[] to the list of non-dischargeable debts obligations to repay educational funds received in the form of benefits

11

(such as VA benefits), scholarships (such as medical service corps scholarships) and stipends." *See Campbell*, 2016 WL 1166142, at *4 (citing Federal Debt Collection Procedures of 1990: Hearing on P.L. 101–647 Before the H. Subcomm. on Econ. and Commercial L., H. Judiciary Comm. 101st Cong. 74–75 (June 14, 1990)). These "educational benefit" programs trigger section 523(a)(8)(A)(ii)'s "obligation to repay funds received" if the student fails to comply with certain conditions such as grade requirements and post-graduation employment restrictions. *See, e.g., Burks v. Louisiana (In re Burks)*, 244 F.3d 1245, 1246 (11th Cir. 2001) (excepting from discharge stipend repayment obligation triggered by the debtor's failure to comply with stipend's underlying condition). The Court believes this is the proper reading of section 523(a)(8)(A)(ii).

Applying this interpretation of section 523(a)(8)(A)(ii), the Court finds that the allegations of the Amended Complaint satisfy section 523(a)(8)(A)(ii) and finds that the loans in this case are not "obligation[s] to repay funds received as an educational benefit, scholarship, or stipend."

## B. Section 523(a)(8)(B)

Section 523(a)(8)(B) excepts from discharge "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986." 26 U.S.C. § 221(d) provides in relevant part:

> (1) Qualified education loan.—The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses . . .
> (2) Qualified higher education expenses.—The term "qualified higher education expenses" means the cost of attendance . . . at an eligible educational institution . . . . For purposes of the preceding sentence, the term "eligible educational institution" has the same meaning given such term by [26 U.S.C.] section 25A(f)(2). . .

In turn, 26 U.S.C. § 25A(f)(2) provides:

(2) Eligible educational institution.—The term "eligible educational institution" means an institution—

(A) which is described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), as in effect on the date of enactment of this section, and

(B) which is eligible to participate in a program under title IV of such Act.

In short, section 523(a)(8)(B) excepts from discharge loans for attending an "eligible educational institution," recognition of which is dictated by the Federal School Codes List for the years 2004–05, which identify "[a]ll postsecondary schools that are currently eligible for Title IV aid." St. Christopher's does not appear as an eligible educational institution on the Federal School Codes List. For this reason, the Court finds that the Debtor has established a prima facie case that St. Christopher's is not an "eligible educational institution," and thus the loans from Citizens are not "qualified education loans," as defined in 26 U.S.C. § 221(d)(1) and (2). Accordingly, the loans in this case are not excepted from the Debtor's discharge under section 523(a)(8)(B).

## CONCLUSION

For the foregoing reasons, the Court grants the Debtor's amended motion for default judgment declaring that the Debtor's obligations to Citizens are discharged in this bankruptcy. An order and judgment consistent with this Memorandum Decision shall issue forthwith.



**Dated: Central Islip, New York**
       **April 4, 2016**

**Robert E. Grossman**
**United States Bankruptcy Judge**